Case No. 4,520.

ERNEST v. STOLLER et al.

[5 Dill. 438;[1] 2 McCrary, 380.]

Circuit Court, D. Colorado. March, 1879.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Mr. Butler, for plaintiff.
Mr. Hughes, for defendants.

Before DILLON, Circuit Judge, and HALLETT, District Judge.

HALLETT, District Judge. Defendants are engaged in the business of selling live stock at Kansas City, in the state of Missouri. In July last, plaintiff consigned to them, from Deer Trail, in this state, ten car-loads of cattle, to be sold for his account. The cattle arrived at Kansas City on the 26th day of July, and were immediately forwarded to Brown, Price & Co., of Chicago, who sold them and remitted the proceeds to defendants, at Kansas City, by draft on New York. This draft, amounting to $3,771.65, was received by defendants at Kansas City in the morning of the 1st day of August, and was by them deposited to their own credit in the Mastin Bank, at that place. Deducting a small sum due them for charges on the cattle, defendants at the same time drew a check on the bank for the sum due to plaintiff, as the net return from the sale of the cattle, and took in exchange for the check a deposit slip in the following form:

"The Mastin Bank, Kansas City, Mo., 7-31, 1878. Exchange Bank, Denver, Col.: Your account has credit thirty-seven hundred and fifty-seven 56-100 dollars, deposited by Stoller & Hill, for use of F. P. Ernest. Very respectfully,

"John J. Mastin, Cashier,
"Per J. A. Boarman, Teller.
"$3,757 56-100."

This certificate was issued in duplicate and one copy delivered to defendants, and by them sent by mail to plaintiff, at Deer Trail, where it was received on the 3d day of August. According to the course of business, as claimed by defendants, the Mastin Bank should have sent the other copy by the next mail to the Exchange Bank, of Denver; but this apparently was omitted, as the officers of the latter bank testified that they did not receive it until some time after the Mastin Bank suspended, and then notice of the credit was sent by the receiver of the bank.

The date as given in the certificate—July 31st—is shown to be incorrect. It was issued on the 1st day of August, and the credit was not entered on the books of the bank until the next day. On the 3d day of August, 1878, the Mastin Bank was not opened for business, and from thence hitherto it has been wholly insolvent, so that the sum so deposited by defendants has not been received by the Exchange Bank or by the plaintiff. It is claimed by defendants that the money was deposited in the Mastin Bank in compliance with instructions from plaintiff to place the amount to his credit in the Exchange Bank, of Denver. As to the in-

structions given relating to the proceeds of the sale, and all the facts hereinbefore mentioned, there is no controversy.

At an interview between the plaintiff and defendant Stoller, which took place at Kansas City about the time the cattle arrived at that place, defendants were directed to place the money received from the cattle to plaintiff's credit in the Exchange Bank, of Denver. Both parties agree in this statement, and also in saying that no directions were asked or given as to the manner of transmitting the money to the Exchange Bank. Considered in itself, the instruction given by plaintiff to defendants imports nothing more than the substitution of the Exchange Bank, of Denver, for himself, as the party to whom the money was to be sent. But defendants contend that it has a peculiar significance when taken in connection with a custom or usage universally recognized by cattle dealers at Kansas City, and well known to all persons dealing with them, by which money is remitted to banks in other places in the way and manner adopted by defendants in this instance. By this usage, the factor is required to deposit in some bank in Kansas City the proceeds of any consignment that may be made to him to the credit of the bank to which the remittance is to be made, and to forward to his customer one of the slips issued by the bank at Kansas City, attesting such deposit. With that, it is said his duty ends, and, if any loss occurs, it must fall on the principal rather than the agent. From the evidence given at the trial, it seems that the usage is not recognized by all the dealers at the Kansas City stock-yards, but perhaps it is sufficiently shown that the course pursued by defendants was recognized among such dealers at that place as a method of transmitting money to distant places. Four out of thirteen or fifteen firms engaged in that business at the stock-yards near Kansas City were in the habit of remitting money in that way, and the officers of the First National Bank, formerly in business there, and of the Mastin Bank, testify that the practice was general.

The direction to defendants to place the money to plaintiff's credit in the Exchange Bank, of Denver, required them to transmit the money to the bank in some usual and customary method, recognized among business men as proper for that purpose; and if there are several methods of transmitting money from Kansas City to Denver equally in use among business men, and safe, serviceable, and economical, no reason is perceived for saying that defendants were bound to adopt one such method more than another. From what we know of business in the country at large, although no evidence was given on that point, we may assume that if the money had been sent by express, or by bill of exchange on New York, the risk of loss in transitu would have been with the plaintiff. Choosing fairly between

known and recognized methods of sending the money as directed by plaintiff, defendants would not be held responsible for an error in judgment, or for any misfortune to which they had not contributed. Whart. Ag. § 248; Chandler v. Hogle, 58 Ill. 46. And so we may say that if the method adopted by defendants for transmitting the money to the Exchange Bank was in use among business men in Kansas City and Denver. they cannot be chargeable with negligence or omission of duty to their principal in resorting to it.

But when we consider attentively the nature of the alleged usage, we find that it is not shown to be of sufficient extent to embrace the subject of this controversy. It is said to be a method of transmitting money from one city to another, but it cannot be such unless it extends to the place to which the money is to be sent, as well as that from which it started. It must be a usage between the bankers in Kansas City and the bankers in Denver, or between the Mastin Bank and the Exchange Bank, of Denver, to be effectual in any way. According to the alleged usage, the effective act in transferring the funds from Kansas City to Denver was to be performed by the Denver bank; money was deposited in Kansas City to the credit of the Denver bank, and, of course, it would remain there until the bank should draw for it, or get it in some other way. In other words, defendants were instructed to send the money to the Exchange Bank, of Denver, and, instead of complying with that instruction, they placed it in the Mastin Bank, at Kansas City, and invited the former to come to Kansas City and get it, or send for it, as would best suit its convenience. If, by force of some general usage between the banks named, or between the banks in Kansas City and the banks in Denver, or by some special agreement, authority had been conferred on the Mastin Bank to receive deposits for the Exchange Bank, the position assumed by defendants would be more tenable. But nothing of that kind was shown. The Exchange Bank did not keep an account with the Mastin Bank at the time of this transaction, and the alleged usage was not shown to exist, except in Kansas City. Whatever the custom of banks and dealers in that city may be in matters of this kind, it could not confer the authority here claimed for it. The Exchange Bank was not in any way bound to recognize the deposit made by defendants in the Mastin Bank for its use, or to take any action in respect to it. For the purpose of transmitting the money, the defendants could have notified the Exchange Bank that they held it subject to order, and the act would have been just as effective. That the money was not sent, or anything that could symbolize it. is too plain for argument.

The language of the deposit slip is, "Your account has credit," which means no more than we hold for your use, or, we have a

sum of money, and you can get it whenever you may apply for it. Until the Denver bank should agree to such holding in some form, or should send for the money by draft, or otherwise, no transfer of the fund would take place. And whether this would have been done by the Denver bank at any time if the Mastin Bank had continued in business, is matter for conjecture only. They were not bound to act, and we cannot assume that they would have taken any steps to get the money. That is not, however, of any importance in this connection; it is only necessary to say that defendants were instructed to send the money to the Exchange Bank, and they have not done it.

That they acted in good faith, upon the assumption that the Exchange Bank would accept the credit in the Mastin Bank, and that the course pursued by them was sanctioned by commercial usage at Kansas City, will not help them. They should have put the money into the Exchange Bank, or adopted the usual and ordinary means to effect that end; and having failed to do either, and to show affirmatively that such failure was not the cause of the loss, they must be held for the amount. The judgment will be for the plaintiff. Judgment accordingly.